IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CYNTHIA J. FLURRY                                  PLAINTIFF

v.                         CIVIL NO. 17-2007

NANCY A. BERRYHILL,[1] Commissioner
Social Security Administration                                DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Cynthia J. Flurry, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.**     **Procedural Background:**

Plaintiff protectively filed her current application for DIB on August 14, 2014, alleging an inability to work since December 8, 2008,[2] due to attention deficit/hyperactivity disorder, gastroesophageal reflux disease, high blood pressure, severe fatigue, bursitis in the legs, neuropathy, fibromyalgia and depression. (Tr. 74, 159, 176). For DIB purposes, Plaintiff

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] Due to a previous application for benefits that was denied on May 22, 2013, Plaintiff's alleged onset date was amended to May 23, 2013. (Tr. 12, 34-35).

1

maintained insured status through September 30, 2014. (Tr. 12, 176). An administrative hearing was held on October 7, 2015, at which Plaintiff appeared with counsel and testified. (Tr. 30-65). A vocational expert also testified at this hearing.

By written decision dated December 3, 2015, the ALJ found that through the date last insured, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 14). Specifically, the ALJ found that through the date last insured Plaintiff had the following severe impairments: hypertension, non-insulin dependent diabetes mellitus type II, peripheral neuropathy, fibromyalgia, degenerative disc disease of the lumbar spine, obesity, and major depressive disorder. However, after reviewing all of the evidence presented, the ALJ determined that through her date last insured Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found that through the date last insured, Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can perform simple tasks involving simple instructions. The claimant would also be limited to incidental contact with the general public.

(Tr. 18). With the help of a vocational expert, the ALJ determined that through the date last insured Plaintiff could perform work as an addresser and a stuffer. (Tr. 23).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on November 6, 2016. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Doc. 10, 11).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Evidence Presented:

At the administrative hearing held before the ALJ on October 7, 2015, Plaintiff testified that she was forty-eight years of age and had obtained a high school education. (Tr. 38). Plaintiff's past relevant work consists of work as a shipping and receiving clerk and a material handler. (Tr. 60). Prior to the relevant time period, Plaintiff sought treatment for various impairments to include, but not limited to, ADHD, stomach problems, fibromyalgia, low back pain, depression, and high blood pressure.

The pertinent medical evidence during the relevant time period reflects the following. In a letter dated August 12, 2013, Dr. George Tompkins, Plaintiff's treating physician, stated that Plaintiff would not be able to return to her previous position or employment at full or partial capacity due to the totality of her impairments. (Tr. 314). Dr. Tompkins stated Plaintiff was unable to sit or stand continuously for more than one hour within an eight-hour workday due to sciatic right leg pain, radicular leg pain and lumbar degenerative joint disease. Plaintiff was seen by Dr. Tompkins for medication refills on July 23, 2014, August 20, 2014, September 9, 2014, and September 22, 2014. (Tr. 334-337).

After the relevant time period, Plaintiff underwent a consultative general physical examination on October 27, 2014. (Tr. 315-320). Plaintiff complained of generalized pain, worse on her right side. Upon examination of Plaintiff's spine and extremities, Dr. Clifford Evans noted Plaintiff had normal range of motion. Dr. Evans found no presence of muscle spasm and negative straight leg tests, bilaterally. Plaintiff exhibited no muscle atrophy, but Dr. Evans noted Plaintiff may have weakness and pain in the upper arm. Upon a limb function evaluation, Dr. Evans reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive

3

devices; and to walk on heel and toes with pain in her right hip. Plaintiff was unable to squat and arise from a squatting position due to back and hip pain. Dr. Evans indicated that Plaintiff needed a mental status evaluation and x-rays of her right hip and lumbar spine. Dr. Evans opined that Plaintiff had moderate limitations of the body as a whole due to generalized pain from fibromyalgia, degenerative arthritis and her attention deficit disorder.

Plaintiff also underwent a mental diagnostic evaluation performed by Dr. Terry L. Efird on November 24, 2014. (Tr. 323-326). Plaintiff reported that she applied for disability benefits secondary to pain caused by a bad car accident in 2008. Plaintiff also reported experiencing ADHD and depression. Plaintiff reported a history of outpatient mental health services one and one-half to two years ago. Dr. Efird noted, per Plaintiff's report, that she was taking Vyvanse and Cymbalta prescribed by her primary care physician. Plaintiff reported that she took her medication as prescribed and denied experiencing side effects. Plaintiff reported that her medication was somewhat beneficial. Dr. Efird noted Plaintiff reported her ability to perform basic self-care tasks independently and to perform household chores was impaired by physical pain. With respect to adaptive functioning, Plaintiff reported she only drove occasionally due to physical pain; that her ability to shop independently was impaired by physical pain; and that she had difficulty with personal finances due to forgetting to pay the bills or not writing information down. Plaintiff reported her activities of daily living were impaired by physical pain. With respect to social interaction, Plaintiff reported she went on Facebook twice a week and talked to her mother on the telephone daily. Dr. Efird opined that Plaintiff appeared able to track and respond adequately; that no remarkable problems with persistence were noted; and that Plaintiff completed most tasks within an adequate time frame.

Dr. Efird opined that Plaintiff had the capacity to perform basic cognitive tasks required for basic work-like activities.

While not relevant to the time period in question, the record revealed that Plaintiff continued to seek treatment for her impairments after her insured status had expired.

**III.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 404.1520.

**IV. Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ failed to fully and fairly develop the record; 2) the ALJ erred in determining Plaintiff's RFC; and 3) the ALJ erred in relying on vocational expert testimony as it conflicted with the Dictionary of Occupational Titles (DOT) and companion publications.

**A. Insured Status and Relevant Time Period:**

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on September 30, 2014. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether

Plaintiff was disabled during the relevant time period of March 23, 2013,[3] her amended alleged onset date of disability, through September 30, 2014, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB she must prove that on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

### B.     Fully and Fairly Develop the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir.1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir.2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not

---

[3] Defendant pointed out that Plaintiff conceded at the administrative hearing held on October 7, 2015, that the prior decision is res judicata for the period from December 8, 2008, to May 22, 2013. (Tr. 34). See Hillier v. Soc. Sec. Admin., 486 F.3d 359, 364 (8th Cir. 2007) (holding res judicata bars subsequent applications based on the same facts and issues previously found to be insufficient to prove disability, and when res judicata applies, the medical evidence from the prior proceeding cannot be subsequently reevaluated).

never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

Plaintiff argues that the ALJ erred in not finding Plaintiff had manipulative limitations when determining her RFC. A review of the record revealed that after the expiration of her insured status, Plaintiff had a consultative general physical examination performed by Dr. Evans. While Dr. Evans noted Plaintiff had weakness and pain in her upper arm with a fifty-percent loss of strength, he also found Plaintiff had no range of motion limitations in her shoulders, elbows, wrists, or hands. Dr. Evans also found Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip; to oppose thumb to fingers; and to pick up a coin. After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### C. The ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

8

evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect h[er] RFC." Id.

"The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (citations omitted). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

In determining that Plaintiff maintained the RFC to perform sedentary work with limitations, the ALJ considered the medical assessments of the examining and non-examining agency medical consultants; Plaintiff's subjective complaints; and her medical records. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

Plaintiff argues that the ALJ improperly discounted Dr. Tompkins opinion that Plaintiff was unable to sit or stand continuously for more than one hour within an eight-hour workday due pain.[4] After review, the Court finds that the ALJ did not err in giving the opinion of Dr. Tompkins little weight. The ALJ declined to give controlling weight to Dr. Tompkins opinion for good and well-supported reasons. See Goff v. Barnhart, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion."). The ALJ also took Plaintiff's obesity into account when determining Plaintiff's RFC. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### D.     Step-Five Determination:

Plaintiff argues that the vocational expert's testimony conflicts with the DOT and companion resources. Specifically, Plaintiff argues that the jobs the vocational expert found Plaintiff able to perform require detailed instructions, not the simple instructions indicted in the RFC. (Doc. 10, Attachment 1, pp. 8-10).

When an apparent conflict between the DOT and the vocational expert opinion exists, an ALJ has an affirmative responsibility to address the conflict. Young v. Apfel, 221 F.3d 1065, 1070 (8th Cir. 2000). If evidence from the vocational expert appears to conflict with the DOT, the ALJ must obtain "an explanation for any such conflict." Renfrow v. Astrue, 496 F.3d 918, 921 (8th Cir. 2007). In the present case, the DOT number assigned to the above mentioned

---

[4] The Court notes the record includes a letter written by Dr. Tompkins dated October 6, 2015, stating that he stood by the medical source statement completed on October 30, 2012. (Tr. 788).

10

jobs of addresser and stuffer are 209.587-010, and 731.685-014, respectively. See DICOT §§ 209.587-010, 731.685-014 at www.westlaw.com. A review of the job requirements for these jobs revealed the both require a specific vocational preparation level of two and a reasoning level of two.

In Moore v. Astrue, 623 F.3d 599, 604 (8th Cir. 2010), the Eighth Circuit specifically held that an individual limited to simple job instructions can perform work requiring level two reasoning. The Court in Moore noted that the ALJ did not limit the individual to "simple one- or two-step instructions," but only to "simple instructions." Id. The same is true in the instant case. There was no conflict between the DOT and the vocational expert's testimony that Plaintiff can perform the positions of addresser and stuffer.

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments, which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as an addresser and a stuffer, prior to the expiration of her insured status. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V. Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C.**

11

**§ 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of September 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE